# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BULLET LAND, INC., et al.,    : | |
|     Plaintiffs,    : | Civil Action No. 1:06-CV-1587 |
| : | |
| v.    : | (Chief Judge Kane) |
| : | |
| JOSEPH THAL, et al.,    : | |
|     Defendants.    : | |

## **MEMORANDUM**

Before the Court are Defendants' motion for summary judgment and Plaintiffs' motion for leave to file an amended complaint. (Doc. Nos. 13-14.) Both parties have briefed the motions, and both motions are ripe for disposition. For the following reasons, the Court will deny Defendants' motion for summary judgment and grant Plaintiffs' motion for leave to file an amended complaint.

This case involves the dissolution of a partnership – the Gettysburg Hotel Investors Limited Partnership ("GHI") – between Plaintiff Bullet Land and Defendant Joseph Thal, created to renovate, restore, and operate the historic Gettysburg Hotel, and the subsequent bid by Bullet Land to purchase Thal's interest in the partnership.[1]

At the core of this dispute is an unfinished appraisal process entered into by Bullet Land and Thal to effect the purchase of Thal's interest in GHI. The parties agreed to enter into the appraisal process in order to determine the fair market value of Thal's interest. Precisely where

---

[1] Bullet Land, Inc., is a Pennsylvania corporation, the sole shareholder of which is Gettysburg College. On January 1, 2000, Thal transferred part of his interest in GHI to TF Consultants, LLC, in which Thal owns a 99% interest. The caption identifies Plaintiffs as: Bullet Land, Inc.; Bullet Land, Inc., as General Partner; and Bullet Land, Inc., limited partner t/a Gettysburg Hotel Investors Limited Partnership. The caption identifies Defendants as Joseph Thal and TF Consultants. For the purposes of the motions, the Court will refers to Plaintiffs collectively as Bullet Land and Defendants as Thal.

the parties are in that process remains to be determined – Bullet Land suggests it never truly began, Thal suggests it is all but complete.  Why the purchase has not occurred also remains to be determined – Bullet Land suggests that the appraisal process went awry, Thal suggests that Bullet Land backed out because the price was too high.  Finally, why the parties agreed to begin the appraisal process is disputed – Bullet Land suggests that it was to effect the purchase of the land, Thal suggests that it was to effect a settlement of claims implicated in the instant lawsuit.  What is not disputed is that no purchase ever came about, and this lawsuit arose as a result.

**I.      BACKGROUND**

      **A.      Procedural Background**

Plaintiffs filed the instant three-count complaint on August 16, 2006, seeking: (1) a declaratory judgment that the appraisal process was not followed; (2) compensatory and punitive damages for an alleged breach of fiduciary duties; and (3) compensatory damages for an alleged breach of contract.  (Doc. No. 1.)  Defendants filed an answer with affirmative defenses and four counterclaims on September 15, 2006.  (Doc. No. 9.)  The following week, Plaintiffs filed an answer to Defendants' counterclaims.  (Doc. No. 11.)

On October 6, 2006, the parties filed the motions now before the Court.  Defendants moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 on all three counts of Plaintiffs' complaint and on Count II of Defendants' Counterclaims.  (Doc. No. 14.)  Plaintiffs moved for leave to file an amended complaint pursuant to Federal Rule of Civil Procedure 15(a).  (Doc. No. 13.)  Both parties fully briefed the motions (Doc. Nos. 17-21, 26), and the Court heard oral argument on both motions on November 15, 2006.  On the day of oral argument, Defendants filed a supplemental brief in support (Doc. No. 28), which Plaintiffs moved to strike (Doc. No.

29).[2]

**B.      Factual Background**

For the purpose of deciding the motions before Court, the following facts are assumed to be true and not in dispute:

Until January 2006, Thal served as the General Partner of the Gettysburg Hotel Investors Limited Partnership ("GHI"), which owned and operated the historic Gettysburg Hotel. On January 16, 2006, Thal received a hand-delivered letter (dated January 11, 2006) written by John Jaeger, Chairman of Bullet Land. That letter stated that Thal was "hereby notified of [his] removal for good cause as General Partner of the Gettysburg Hotel Investors limited partnership . . . effective as of the date of service of this letter." The next day, Bullet Land filed a complaint in this Court seeking a declaratory judgment that Thal's removal was, in fact, for "good cause" and seeking to enjoin Thal from acting as General Partner of the partnership.

After the complaint was filed, the parties began to negotiate a resolution of the lawsuit. After a series of telephonic and written exchanges between counsel, the parties came to a written agreement on February 7, 2006, signed by the parties, which included the following significant terms:

> 1. Bullet Land, Inc. (the "Limited Partner") agrees to accept the resignation of the General Partner [TF Consultants] effective as of January 17, 2006 and agrees to waive the advance notice provisions contained in the Section 12.3 of the Partnership Agreement.
>
> 2. The Limited Partner will dismiss the above-referenced litigation without prejudice upon [Bullet Land's] receipt of a copy of this letter and the enclosed Assignment [of a liquor license] executed by Thal

---

[2] Because the motion for leave to file an amended complaint will be granted and the motion for summary judgment will be denied, the motion to strike will be denied as moot.

>and by the General Partner [TF Consultants].  However, the Limited Partner will not move to seal the pleadings as such a filing would be futile.
>
>* * *
>
>4. The General Partner [TF Consultants] and Limited Partner will exchange General and Mutual Releases once the Limited Partner has purchased the General Partner's interest.

Significantly for the purpose of the instant motions, the parties also agreed that "the purchase price of the General Partner's interest in the partnership must be determined according to the provisions of Section 12.5 of the Partnership Agreement."

The following day, in accordance with the agreement, Bullet Land filed a notice of dismissal pursuant to Federal Rule of Civil Procedure 41, and the complaint was dismissed without prejudice.  Bullet Land also became the General Partner of GHI, as Thal had tendered his resignation as General Partner.

Pursuant to the February 7th agreement, the parties began the process to determine the purchase price of Thal's interest as described in section 12.5 of the Partnership Agreement. Section 12.5 reads, in full:

>a. On the retirement, removal, bankruptcy or dissolution of the General Partner, or death or legal incapacity if the General Partner is an individual,[3] the interest of the General Partner in the Net Income, Net Loss and Distributions from the Partnership shall be purchased by the Partnership for a purchase price determined according to the provisions of Section 12.5b.  If all General Partners retire, are removed, become bankrupt, die, or are legally incapacitated, then the Partnership shall be obligated to pay to the General Partner the purchase price of the General Partner's interest as determined by Section 12.5c hereof.

---

[3] The February 7th agreement specified that Thal "resigned."

> b. The General Partner shall receive from the Partnership the fair market value of its interest in the Partnership determined by agreement between the General Partner and the Partnership, or if they cannot agree, by appraisal. In order to accomplish the appraisal the General Partner shall, within seven (7) days after the failure of the Partners to agree on the fair market value of the General Partner's interest, select an appraiser and shall notify the Partnership of the General Partner's choice of the appraiser, in writing. Thereafter, within five (5) days, the Partnership shall select its appraiser and shall notify the General Partner of its choice in writing. Within five (5) days after the receipt of the notice containing the name of the appraiser selected by the Partnership, the appraiser for the General Partner and the appraiser for the Partnership shall select a third party, who shall become the neutral appraiser. The three (3) appraisers shall collectively determine the fair market value, the fair market value shall be calculated by averaging the value of the two (2) highest appraisals. Thereafter, utilizing the substituted fair market value of real estate for book value, the fair market value of the interests of the General Partner shall be the amount the General Partner would have received upon dissolution of the Partnership as determined by the then Certified Public Accountant for the Partnership. Payment shall be made as follows: twenty-five percent (25%) of the purchase price in cash within fifteen days following the determination of the value of the share and the balance by a Promissory Note due one (1) year from the date of an event occurring under Section 12.5a. hereof, and shall bear interest at ten (10%) percent simple from the date of the Note on the unpaid principal balance of the Promissory Note.
>
> c. The purchase price of the General Partner's interest in the Partnership shall be the greater of (i) amount determined under Section 12.5(b) above, or (ii) the balance in the General Partner's capital account as of the date of the notice of removal given pursuant to Section 12.3 hereof.

Restated, the appraisal process under section 12.5 involved five basic steps: (1) each party selects one appraiser; (2) those two appraisers select a third, neutral appraiser; (3) the three appraisers "collectively determine" a fair market value; (4) in the event that the appraisers values differ, the lowest appraisal value is disregarded and the highest two appraisal values are averaged; and (5) the average is submitted to a certified public accountant to determine the final

purchase price.

These steps took place. The parties selected appraisers: Bullet Land selected John Lynch, Thal selected Wayne Whitney, and Lynch and Whitney together selected Maureen Mastroieni to act as the neutral appraiser. Lynch, Whitney, and Mastroieni submitted appraisal reports with fair market values of $13.4 million, $17.1 million, and $12 million, respectively.[4] Mastroieni's value was disregarded, and the buy-out price was calculated to be $3,612,668.57 based upon the Lynch and Whitney appraisal values. On July 23, 2006, Thal's counsel submitted a letter to an independent certified public accountant. On August 7, 2006, the accountant confirmed the buy-out price in a written letter to Thal's counsel.

On August 11, 2006, Thal's counsel emailed Bullet Land's counsel a "Mutual General Releases" form "[a]s per the agreement of the parties dated February 7, 2006." On August 14, 2006, Thal's counsel telephoned Bullet Land's counsel advising him that Thal was "ready to close on the transaction, now that the Partnership's accountants have confirmed the necessary buy-out computations. . . ." Bullet Land's counsel, however, indicated that his clients refused to close on the sale. Two days later, on August 16, 2006, Bullet Land filed the instant complaint in this Court.

---

[4] On May 31, 2006, parties' counsel exchanged emails and telephone calls related to the appraisers' valuations, wherein Thal's counsel indicated that Whitney's appraisal came in at $17.1 million and Bullet Land's counsel indicated that Lynch's appraisal came in at $14.1 million. In a voice-mail message, Bullet Land's counsel suggested that everybody should "hold off sending" the respective appraisal reports, which everyone apparently agreed to. On June 6, Whitney's appraisal report was sent to Bullet Land and Thal requested a copy of Lynch's appraisal report. On June 29, Bullet Land submitted to Thal's counsel a copy of Lynch's appraisal report, which calculated the fair market value to be $13.4 million. Bullet Land claims that the discrepancy between the May 31 and June 29 values arose because the May 31 value was not the "final" value.

On October 20, 2006, the neutral appraiser Mastroieni submitted a written report to Bullet Land's counsel, prepared in connection with this litigation, advising him that in her opinion the Whitney appraisal report was "not credible" based upon her independent review of the appraisal.  According to her report, Mastroieni believed that the Whitney appraisal contained contradictory data with insufficient explanations and was lacking in analysis, included inappropriate comparable data, and contained projections that were not "supported by market evidence and disregard[ed] current market conditions."

## II.     MOTION FOR SUMMARY JUDGMENT

### A.     Standard of Review

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-51 (1986).  When deciding a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party, who is "entitled to every reasonable inference that can be drawn from the record."  Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000).  However, the nonmoving party may not simply sit back and rest on the allegations in the complaint, but must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (internal quotations omitted).  Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden at trial." Id. at 322.

**B.     Discussion**

Thal moved for summary judgment on the grounds that: (1) the Court may not review Whitney's appraisal because Bullet Land's objections thereto were untimely and improper; and (2) the February 7th agreement constituted a settlement agreement, barring Bullet Land from seeking relief in the instant suit.  The Court will address both grounds.

**1.     Review of the Whitney appraisal report**

Thal argues that summary judgment is required because the buy-out figure determined through the appraisal process should be construed as common-law arbitration award, and therefore, the Court's inquiry into the Whitney appraisal must be limited pursuant to the Pennsylvania Arbitration Act.  See 42 Pa. Cons. Stat. § 7341 ("The award of an arbitrator in a nonjudicial arbitration . . . is binding and may not be vacated or modified unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award.").  Bullet Land disputes the applicability of the Act, arguing that the appraisal process called for by the amended partnership agreement does not constitute common-law arbitration and that no comparable appraisal award exists.  Furthermore, Bullet Land argues that even if any award exists, the Whitney appraisal was not submitted in good faith and therefore was in violation of the parties' agreement.  Even assuming, without deciding, that the Act applies in this case, summary judgment is not proper at this early stage in the proceedings.  Genuine factual disputes remain as to whether an award exists and/or is enforceable within the meaning of the Act.  Accordingly, summary judgment will be denied on this basis.


      **2.    Settlement**

Settlement is strongly favored in Pennsylvania. Rothman v. Fillette, 469 A.2d 543, 546 (Pa. 1983). Yet for a settlement agreement to be enforceable under Pennsylvania law, "the nature and extent of the mutual obligations must be certain, and the parties must have agreed on the material and necessary details of their bargain." Krebs v. United Ref. Co. of Pennsylvania, 893 A.2d 776, 783 (Pa. Super. 2006). And as the Pennsylvania Supreme Court has held: "[w]hen there exists conflicting evidence as to whether the parties intended that a particular writing would constitute a complete expression of their agreement, the parties' intent is a question to be resolved by the finder of fact." Mazzella v. Koken, 739 A.2d 531, 536 (Pa. 1999). In this case, the parties do not agree that the February 7, 2006, letter constituted an enforceable settlement agreement and the parties' intent is not evident from its plain terms. Bullet Land is entitled to discover and present facts that bear on the Court's determination of whether the February 7, 2006, letter is a valid, enforceable settlement agreement as advanced by Thal. Accordingly, Defendants' motion for summary judgment will be denied.

## III.    MOTION FOR LEAVE TO AMEND THE COMPLAINT

Federal Rule of Civil Procedure 15(a) allows a party to seek leave of court to amend a pleading, which "shall freely be given when justice so requires." Fed. R. Civ. P. 15(a). Whether to grant or deny leave to amend is at the discretion of the Court. Foman v. Davis, 371 U.S. 178, 182 (1962). However, "[l]eave to amend must generally be granted unless equitable considerations render it otherwise unjust." Arthur v. Maersk, Inc., 434 F.3d 196, 204 (3d Cir. 2006).

In this case, the present complaint does not address any of the facts surrounding the

agreements between Bullet Land and Thal that were entered into following the conclusion of the previous litigation. The proposed amended complaint sets forth additional details and relief related to that dispute. Because the Court will deny Defendants' motion for summary judgment, the motion for leave to file an amended complaint is timely, and in the interest of justice should be granted. Therefore, the Court will grant Plaintiffs' motion for leave to file an amended complaint.

## IV.  CONCLUSION

For the foregoing reasons, the Court will deny Defendants' motion for summary judgment and grant Plaintiffs' motion for leave to file an amended complaint. An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BULLET LAND, INC., et al.,** | : | |
|     Plaintiffs, | : | Civil Action No. 1:06-CV-1587 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| **JOSEPH THAL, et al.,** | : | |
|     Defendants. | : | |

## **ORDER**

**AND NOW**, this 7th day of December 2006, upon consideration of Plaintiffs' Motion for Leave to file an Amended Complaint (Doc. No. 13) and Defendants' Motion for Summary Judgment (Doc. No. 14), filed in the above-captioned matter, and for the reasons set forth in this Court's Memorandum Opinion filed herewith, **IT IS HEREBY ORDERED** that Defendants' motion is **DENIED** and Plaintiffs' motion is **GRANTED**. It is further ordered that any other motions pending before this Court are **DENIED** as moot.

                                                    s/ Yvette Kane
                                                    Yvette Kane, Chief Judge
                                                    United States District Court
                                                    Middle District of Pennsylvania